UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

LEONARDO RAMOS HERNANDEZ,

Plaintiff

v.                                                                Civ. No. 98-2349 (PG)

STATE ELECTIONS BOARD,
COMMONWEALTH OF PUERTO RICO,

Defendants

## OPINION & ORDER

I.  **Background**

Plaintiff, Leonardo Ramos Hernández, filed the instant action pursuant to P.R. LAWS ANN. tit. 16, § 3016a (1999)[1] before the Court of First Instance of Puerto Rico, seeking judicial review of a decision of the State Elections Board[2] ("SEB") denying his request that a "write-in" column be provided to electors and that each write-in status proposal be accounted for in the upcoming Puerto Rico status plebiscite to be held on December 13, 1998, pursuant to Law No. 249 of August 17, 1998. Ultimately, plaintiff contends that Law No. 249 is unconstitutional because he was not be permitted to effectively cast his write-in vote, thus precluding him from exercising his right to vote, freedom of expression and association.

Plaintiff states in his Complaint that he provided in an October 22, 1998 request to the SEB an extensive explanation of the status alternative he intends to vote for. This status alternative provides

---

[1] Section 3016a provides in pertinent part: "[a]ny party affected by a resolution, ruling or order of the Commonwealth Commission may . . . appeal to the Superior Court by submitting a writ for review."

[2] Though the parties translate "Comision Estatal de Elecciones" to mean "State Election Board," the proper translation is "State Elections Commission."



AO 72A
(Rev.8/82)

98-2349 (PG) 2

both an internal and autonomous local government for the island composed of three branches, and a novel political relationship with the United States. Plaintiff envisions a permanent union between both governments, in which Puerto Rico shall be subject to the plenary power of Congress under the constitutional provision for admission of new states into the Union. Puerto Rico will no longer be authorized to tax imports from the mainland, but nonetheless shall maintain its fiscal autonomy. The federal government shall continue to exercise its customs powers, and federal cabotage laws shall remain in vigor in the island.

Plaintiff's novel and elaborate status definition further provides that the government of Puerto Rico have six resident commissioners in Congress, with equal standing to congressmen in the United States House of Representatives. Whenever a federal law is enacted, and the same adversely affects Puerto Rico, it shall be placed on a "fast track" process so that Congress either amend the same or not. Plaintiff also demands a constitutional amendment to the effect that residents of Puerto Rico be allowed to vote for the President and Vice President of the United States. Finally, plaintiff contends that the constitutional doctrine that Puerto Rico is an unincorporated territory of the United States is void and unacceptable.

On November 6, 1998, Superior Court Judge Carmen Rita Vélez Borrás ordered the Attorney General of Puerto Rico to appear as a party to the instant action.[3] On November 13, 1998, the Commonwealth filed a Notice of Removal of this action to this United States District Court, contending that plaintiff's claims arose under federal law. *See Ramos Hernández, et al. v. State Elections Comm'n*,

---

[3] P.R. Civ. P. 21.3 provides that in actions where the constitutionality of a Commonwealth law is challenged, the Attorney General shall be permitted to intervene on behalf of the Commonwealth.

98-2349 (PG)                                                                                                                3

*et al.*, 30 F. Supp. 2d 178 (D.P.R. 1998).[4]

In an Opinion and Order of November 25, 1998, Judge Casellas remanded the case to commonwealth court, finding that plaintiff's claims were strictly local in nature and that any federal question that could arise in this case would do so by way of a defense and therefore the case was not removable. *See Ramos Hernández, et al. v. State Elections Comm'n, et al.*, 30 F. Supp. 2d at 179..

On November 30, 1998–subsequent to the case being remanded–plaintiff filed four pleadings before the Commonwealth Court of First Instance: a motion for summary judgment, a sworn declaration, an informative motion, and a motion adding intervening party. At pages 3-4 of his motion for summary judgment, plaintiff describes in a detailed and meticulous manner the procedure he requires in order for his write-in vote to be adequately accounted for. In a nutshell, plaintiff wanted to go to the "Colegio de Votación"[5] with his status proposal in hand, and inform the "funcionarios"[6] of his intention to cast a write-in vote. The "Colegio de Votación" would then have recused his vote on the basis that his status proposal was not considered *bona fide*. A recusal procedure would follow, in which a court, exercising review jurisdiction, would have to determine whether his status proposal was valid prior to ordering that his vote be adjudicated and counted.

In his motion for summary judgment, Plaintiff claims that Law No. 249 precludes him from freely exercising the right to vote by not letting him cast a dissenting vote. He further states that even

---

[4] The case was originally assigned to Judge Raymond L. Acosta, who recused himself on November 19, 1998. The case was then randomly assigned to Judge Salvador E. Casellas.

[5] The "Colegio de Votación" is not defined or described by Plaintiff. The Court's best guess would be that Plaintiff means the State Election Commission.

[6] Though Plaintiff does not define the term "funcionarios," the Court believes it to mean the public officials working at the "Colegio de Votacion," defined above..

98-2349 (PG) 4

if his proposed write-in procedure is recognized by a court, the same cannot be implemented because Article 32 of Law No. 249 provides that any change, alteration or modification of the status petitions in the Law will result in the same ceasing to have effect.

Defendants filed a second notice of removal on December 3, 1998 based on Plaintiff's amended pleadings. On December 4, 1998, Plaintiff once again amended his pleadings by filing several motions before the Court. Among the motions filed was a "Motion to Join Separate and Independent Cause of Action Seeking New Relief." In this motion, Plaintiff brought a § 1983 cause of action against the Commonwealth, contending that its removal of the case to federal court violated his constitutional rights regarding the December 13, 1998 status plebiscite. Plaintiff also filed a "Motion to Join in Removal," whereby Plaintiff conceded that the Court had subject matter jurisdiction over the removed action.

This Court issued an Opinion and Order on December 9, 1998 upholding the removal of the case, finding that the pleadings filed subsequent to Judge Cassellas' remand order stated a federal cause of action. *Ramos Hernández v. State Elections Bd.*, 30 F. Supp. 2d 212, 214, 217 (D.P.R. 1998).

On December 13, 1998, the plebiscite referendum was held. The results were subsequently transmitted to the President and the Congress of the United States.[7]

---

[7]

| December 13, 1998 Plebiscite | # Votes | % |
|---|---|---|
| "None of the above" | 787,900 | 50.3 |
| Statehood | 728,157 | 46.5 |
| Independence | 39,838 | 2.5 |
| Free Association | 4,536 | 0.3 |
| Commonwealth | 993 | 0.1 |
| Invalids | 2,956 | 0.2 |
| Blank | 1,890 | 0.1 |

98-2349 (PG)                                                                                                           5

The Defendants filed separate motions to dismiss on December 11, 1998 and December 15, 1998. On January 11, 1999, the Court ordered Plaintiff to show cause why his case should not be dismissed and granted Plaintiff ten (10) days in which to respond. The show cause order was received and filed on January 12, 1999, but not entered until January 14, 1999. On January 29, 1999, Plaintiff responded to the Court's order.

On February 5, 1999, the Court dismissed this case with prejudice(Dkt. 21) following Plaintiff's failure to timely comply with this Court's January 11, 1999 Order to Show Cause why his cause should not be dismissed (Dkt. 19). Plaintiff appealed the dismissal to the First Circuit Court of Appeals, who reversed on procedural grounds and remanded for consideration of Plaintiff's response on the merits. (Dkt. 26) Plaintiff also requested that the First Circuit reconsider and entertain his case on the merits. The First Circuit denied Plaintiff's motion and issued an accompanying mandate on March 20, 2000. (Dkt. 26)

**II.    Law No. 249**

The Puerto Rico Legislative Assembly passed Law 249 of August 17, 1998 to allow the People of Puerto Rico to express their preferences concerning the ultimate political status of Puerto Rico and thereby petition Congress for a redress of grievances resulting from Puerto Rico's current status as a territory subject to plenary congressional power under the Territorial Clause of the United States Constitution, U.S. CONST., art. IV, § 3, cl. 2.

Law 249 provided for the voters of Puerto Rico to express themselves on the status alternatives for the Commonwealth of Puerto Rico in a plebiscite, held on December 13, 1998. The voters were

| Total | 1,566,270 | 100.0 |

98-2349 (PG)                                                                                           6

provided four basic options: (i) entry of Puerto Rico into the United States as a sovereign state on equal footing with the other fifty states, with American citizenship guaranteed under the federal Constitution; (ii) continued plenary Congressional control over Puerto Rico under the Territorial Clause of the federal Constitution, with a federal delegation of power to the government of Puerto Rico to deal with internal affairs, and with American citizenship continuing to be conferred by federal statute; (iii) separate sovereignty for Puerto Rico, accompanied by a treaty of association with the United States; and (iv) separate sovereignty. In addition, those who wish to vote, yet find all of the listed options unacceptable, were expressly permitted to cast a vote for "none of the above."

The status options identified in Law 249 also reflected the basic political reality that any change in Puerto Rico's political status would require approval by the Congress of the United States. *See* Law No. 249, Statement of Motives. The "Statement of Motives" contained in Law No. 249 referred specifically to various Congressional actions pertaining to possible changes in Puerto Rico's status and to the futility of voting on status options that are not "viable, under both constitutional and international law, as well as on the basis of the existing will in Congress and the White House." *Id.*

### III. Defendants' Three (3) Grounds for Dismissal

Defendants introduce three (3) grounds for dismissal of the instant case. Defendants contend that the case must be dismissed because (1) the claims contained within the complaint have become moot, (2) the allegations in the complaint fail to state a cause of action upon which relief may be granted, and (3) Plaintiff's § 1983 claim for damages must be dismissed because Defedants enjoy Eleventh Amendment immunity. The Court discusses each ground below.

**a.   Mootness**

The Court must dismiss a moot case for lack of jurisdiction. *See Aetna Life Ins. Co. v. Haworth,*

98-2349 (PG)                                                                                          7

300 U.S. 227, 240-41 (1937). Mootness arises by a change in circumstances. That is, "a case is moot when the issues presented are no longer 'live,' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). *See also* 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 101.90 (3d ed. 2000). A case may become moot in two ways: (1) the legal issue in dispute no longer is open to review; or (2) a party no longer has a personal stake in the controversy. *See* 15 MOORE'S FEDERAL PRACTICE § 101.90.

> "' [A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The underlying concern is that, when the challenged conduct ceases such that "'there is no reasonable expectation that the wrong will be repeated,'" *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), then it becomes impossible for the court to grant "'any effectual relief whatever' to [the] prevailing party," *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). In that case, an opinion as to the legality of the challenged action would be advisory.

*City of Erie v. Pap's, A.M.*, 529 U.S. __, Slip Op. at 6 (Mar. 29, 2000).

At each stage of litigation a court should "stop, look, and listen" in order to determine the effect of changes in law on the case at hand. *See* 15 MOORE'S FEDERAL PRACTICE § 101.98. *Cf. Kremens v. Bartley*, 431 U.S. 119, 135 (1977) (impact of changes in challenged statute on the composition of certified plaintiffs' class and the duty to of a court to "stop, look, and listen."). The duty to "stop, look, and listen" includes circumstances where a challenged statute is repealed or expires.[8] *See, e.g., Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (plaintiff challenged constitutionality of

---

[8]Events may change during the pendency of the action that cause the controversy to be moot. In *Flynt v. Weinberger*, 762 F.2d 134, 135 (D.C. Cir. 1985), plaintiff brought suit alleging that a ban against press coverage of the Grenada invasion violated the First Amendment. The invasion ended, and the ban as well, prior to the case being resolved. The court declared plaintiff's claims regarding the ban to be moot and dismissed the case. *See also Animal Legal Defense Fund v. Shalala*, 53 F.3d 363, 366 (D.C. Cir. 1995) (plaintiff brought suit against National Academy of Sciences advisory committee; however, during litigation, committee issued final report and dissolved, thereby rendering moot plaintiff's attempt to secure an injunction).

98-2349 (PG) 8

congressional appropriation statute, which was contingent on council's passage of discriminatory policies, rendered moot as a result of expiration of the last extension of the statute).

> We see no reason to treat a challenge to the validity of a statute that has expired any differently from a challenge to the validity of a statute that has been repealed, and accordingly hold that any issues concerning whether H. R. 4042 became a law were mooted when that bill expired by its own terms. The failure of the bill to have any present effect does not depend on any decision as to whether the President's action was a "pocket veto"; the bill by its own terms became a dead letter on September 30, 1984, regardless of whether it had previously been enacted into law or not. *See also Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam).

*Burke, et al. v. Barnes et al.*, 479 U.S. 361, 363-64 (1987).

A change or expiration of a law will not moot an action challenging the constitutionality of the legislation when either there is a "reasonable expectation" that the challenged law will be reenacted or when new legislation or the expiration of the challenged law does not resolve all the issues that the parties sought to address in the litigation. A mere possibility of reenacting the law is not enough. Neither is the mere power to reenact the challenged law.

In the present case, Law No. 249 is still on the books. However, Law No. 249 is a dead-letter law; the plebiscite it enabled occurred on December 13, 1998. After the results were passed on to the President and the Congress of the United States, the law completed it's purpose, and in so doing ceased having its effect. The law thus falls between the examples mentioned above. It neither was replaced nor expired.

A review of Plaintiff's complaint reveals that no meaningful remedy can be given by this Court. Plaintiff's request for injunctive relief cannot be granted as the plebiscite upon which Plaintiff based his complaint has come and gone. The holding of the plebiscite and the transmission of the results mooted this controversy. The Court therefore must find this case moot and dismiss without prejudice.

98-2349 (PG) 9

The Court will nevertheless proceed to examine Defendant's other grounds for dismissal.

**b.    Failure to State a Claim upon which Relief can be Granted**

Fed. R. Civ. P. 12(b)(6) directs to view all evidence in a light most forgiving to Plaintiff. The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement for claim of relief. To accomplish this end, this Court need not accept every allegation as true. The Court accepts only those facts that are well-pleaded.

*Pro se* complaints are accorded an extra amount of latitude. "When a *pro se* complaint sets forth the facts upon which relief is sought, and a lenient construction demonstrates beyond doubt that the plaintiff can prove no set of facts to support her claim for relief, the complaint will be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6)." *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 260 (1st Cir. 1994).

Plaintiff challenged the constitutionality of Law No. 249 on the ground that it does not provide for a "write-in" column on the ballot. The Supreme Court of Puerto Rico has previously addressed this issue. In *Sanchez Colon v. Estado Libre Asociado*, 134 D.P.R. 445 (1993), the plaintiffs challenged the validity of the 1993 plebiscite statute on the basis that they did not endorse any of the status options provided therein. The Supreme Court of Puerto Rico held that it was sufficient that voters displeased with the options on a ballot had the option of turning in blank ones. Presumably, this is why Law No. 249 allowed for a "none of the above" category, along with the other four (4) categories. The Court also points out that in the 1998 plebiscite referendum, close to 2,000 voters chose to turn in blank ballots. The United States Supreme Court, in *Burdick v. Takushi*, 504 U.S. 428 (1992), has also held that a prohibition of "write-in" voting did not unreasonably infringe upon the rights of the citizens under the First or Fourteenth Amendments.

98-2349 (PG)                                            10

Plaintiff had the opportunity to vote for one of five listed choices, or turn in a blank ballot. Thus, Plaintiff's right to vote was not hindered. As Defendants point out in their motion to dismiss, Plaintiff may continue to advocate his particular status proposal. Indeed, Plaintiff may confer with his elected representatives to encourage them to include his proposal on the next plebiscite–if there is a next plebiscite. His displeasure lies within these avenues and not this Court or the plebiscite he so much desired to alter.

c. **Eleventh Amendment Immunity**

The Eleventh Amendment bars damages under a § 1983 claim asserted by a private individual against an unconsenting state. *Rodríguez v. Estado Libre Asociado, et al.*, No. 98-1666 (SEC), 1998 WL 865191 (D.P.R. Nov. 30, 1998) (citing *Will v. Michigan Dep't of Pol.*, 491 U.S. 58, 61 (1989); *Wilson v. Brown*, 889 F.2d 1195, 1197 (D.P.R. 1989). Section 1983 does not abrogate a state's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 245 (1979). Puerto Rico enjoys the protection of Eleventh Amendment immunity. *See Torres v. Puerto Rico Tourism Co.*, 175 F.3d 1, 3 (1st Cir. 1999); *Ortiz Feliciano v. Toledo Davila*, 175 F.3d 37, 39 (1st Cir. 1999).

A state defendant may remove a case to federal court even where the case involves claims barred by the Eleventh Amendment and subsequently move for dismissal of the barred claims. *See Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 383 (1998). Defendants removed this case to federal court and have moved for dismissal of the action pursuant to Eleventh Amendment immunity. Plaintiff's request for damages pursuant to § 1983 are therefore barred by Eleventh Immunity and must be dismissed. Plaintiff's request for declaratory and injunctive relief survive the Eleventh Amendment immunity analysis. However, the Court previously determined that the case was moot and that Plaintiff failed to state a claim upon which relief could be granted.

98-2349 (PG)                                                                                                              11

### IV.    Conclusion

A democracy, by definition, is majority rule. Inherent in this definition is that minority views, those in the lesser number, are repressed. For every majority there is a minority, and for every view there is a counter view.

The Puerto Rico Constitution provides for the right of its citizens to vote "by means of equal, direct and secret universal suffrage." P.R. CONST., art. II, § 2. Mr. Leonardo Ramos Hernández had the opportunity to vote for the governor of Puerto Rico and legislative representatives in Puerto Rico. Despite this, Ramos Hernández questions actions and decisions undertaken by these same elected officials. Yet Ramos Hernández presumably does not question his right to vote, nor the power of the elected officials to determine his fate on a vast array of other issues. Rather, Ramos Hernández attempts to attack a single law designed for a narrow purpose. This, of course, is his right; it is a vital right available under our democratic republic. Unfortunately for Ramos Hernández, "[s]imply being born in Puerto Rico g[ives] plaintiff[] no federally protected right to require the Legislature to solicit [his] views." *Sola v. Sanchez Vilella*, 390 F.2d 160, 161 (1st Cir. 1968).

Wherefore, the Court GRANTS Defendants' Joint Motion to Dismiss on the grounds discussed above. The instant case is therefore DISMISSED.

IT IS SO ORDERED.

San Juan, Puerto Rico, June 22, 2000.

*[signature]*
JUAN M. PEREZ-GIMÉNEZ
U.S. District Judge

AO 72A
(Rev.8/82)